In the MATTER OF the APPLICATION OF the UNITED STATES of America FOR AN ORDER AUTHORIZING DISCLOSURE OF HISTORICAL CELL SITE INFORMATION FOR TELEPHONE NUMBER [redacted]

In the Matter of the Application of the United States of America for an Order Authorizing Disclosure of Historical Cell Site Information for Telephone Number [redacted]

In the Matter of the Application of the United States of America for an Order Authorizing Disclosure of Historical Cell Site Information for Telephone Number [redacted]

Case 1:13–MC–199 (JMF), Case 1:13–MC–1005 (JMF), Case 1:13–MC–1006 (JMF)

United States District Court, District of Columbia.

Signed October 31, 2013

## MEMORANDUM OPINION AND ORDER

JOHN M. FACCIOLA, UNITED STATES MAGISTRATE JUDGE

Pending before the Court are three written and sworn applications pursuant to 18 U.S.C. § 2703(d)[1] that seek historical cell site location information ("CSLI"), each for a different telephone number and directed to a different cellphone company. Two of the applications seek 120 days of CSLI, while the third application seeks seven days of CSLI. For the reasons explained below, each application is denied without prejudice due to both internal inconsistencies and a failure to show that the request-

---

1. All references to the United States Code are to the electronic versions that appear in West-law or Lexis.

ed CSLI is "relevant and material" to the investigations.[2]

## I. Background

The government first submitted an application in 1:13–mc–199 on March 5, 2013, seeking 120 days of CSLI related to an investigation of a series of crimes that occurred in December of 2012 and January of 2013. This Court denied that application without prejudice because it was "based on some obviously outdated boilerplate language" and "ignore[d] the decision in *United States v. Maynard,* 615 F.3d 544 (D.C.Cir.2010), *aff'd on other grounds, sub nom United States v. Jones,* —— U.S. ——, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012)." Minute Order, 1:13–mc–199 (March 11, 2013). The Minute Order also specified that, if the government renewed its application, it should submit a "detailed memorandum of law explaining why an application for historic cell site date [sic] based on a showing of less than probable cause can be granted in light of the Circuit's decision in *Maynard.*" *Id.*

On September 17, 2013, the government simultaneously filed three applications: a *Renewed Application for Disclosure of Historical Cell Site Information Pursuant to Title 18 U.S.C. Section 2703(d)* in 1:13–mc–199 ("13–199 Application"), directed to AT & T; an *Application for Disclosure of Historical Cell Site Information Pursuant to Title 18 U.S.C. § 2703(d)* in 1:13–mc–1005 ("13–1005 Application"), directed to T–Mobile; and an *Application for Disclosure of Historical Cell Site Information Pursuant to Title 18 U.S.C. § 2703(d)* in 1:13–mc–1006 ("13–1006 Application"), directed to Sprint.[3] All three were signed by David Kent, an Assistant United States Attorney for the District of Columbia.

It is evident from the filings that the 13–199 Application and the 13–1005 Application are related to the same investigation and that each seeks 120 days of CSLI. The 13–1006 Application is for a separate investigation and seeks seven days of CSLI.[4]

## II. Internal Inconsistencies

◼ The Applications must be denied because the government inconsistently describes the scope of the CSLI it seeks.

### A. What the Government Purports to Seek

With the exception of additional legal briefing in the 13–199 Application, each contains much identical, boilerplate language. In describing the scope of what is sought by the government, the Applications assert:

> The government only seeks information for cell-site data at the time of calls. The government does not seek data of the phone's whereabouts at all times. Cell-site data related to calls is routinely

---

**2.** At this time, the Court does not find it necessary to address whether the government has adequate statutory authority to obtain CSLI or whether the government's requests violate the Fourth Amendment absent a showing of probable cause.

**3.** Because the Clerk's office will not index filings on ECF for § 2703(d) applications until after an order has been issued granting or denying an application, this opinion cannot reference specific ECF filing numbers. The Court apologizes for the inconvenience.

**4.** This opinion addresses investigatory tools related to an ongoing investigation, and the underlying documents must remain sealed for the time being. However, this opinion is intended to be—and shall be—made public, as it discusses the factual underpinnings in a sufficiently vague manner such as to avoid compromising the ongoing criminal investigations.

retained by AT & T as part of call history information for a period of two years. Further, government's counsel has been informed that call-time cell-site data is the only data retained by the provider in this case. In other words, this Order is not intended to reach all cell-site data for the phone, but only cell-site data for the time of actual calls placed or received by phone.

13–199 Application at 24–25; 13–1005 Application at 4–5; 13–1006 Application at 7–8.[5] Thus, the government's representation to the Court is that it seeks only CSLI that is less than two years old and that is collected *only when a call is made or received.* Per this limiting paragraph, no other CSLI should be disclosed.

**B. Apparently Contradictory Language**

Each Application contains a "Proposed Order" that would—ordinarily—be signed by a Magistrate Judge without modification; it thus represents not only the specific information sought by the government, but also what the cell phone company would be required to disclose. "Attachment A" to these proposed orders specifies that the cell phone company must give the government:

> B. All records and other information (not including the contents of communications) relating to the Account, including … 3. All data about which 'cell towers' (i.e., antenna towers covering specific geographic areas) and 'sectors' (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the Account.

This language is broader than the general explanation found in the Applications, thereby creating an internal inconsistency and several serious problems that, in this Court's view, can only be addressed by the filing of revised Applications.

### 1. The CSLI Request in the Proposed Order is Facially Broader Than That Sought in the Application

The description of the CSLI in Attachment A is facially broader than the CSLI sought in the Applications. According to the Applications, the only CSLI to be disclosed is CSLI sought for the "time of actual calls placed or received by phone." However, Attachment A would order the disclosure of "[a]ll data" about which cell towers communicated with the target phone; it is not limited to only when calls are made or received. As a result, the cellphone company would comply with the order by producing all CSLI that is generated as a result of data usage from using the internet, streaming music, sending and receiving text messages, etc. This, though, is not what the Applications seek.

Furthermore, cellphones routinely contact nearby cell towers and update with the network, even when the phone is not in use. *See In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority,* 396 F.Supp.2d 747, 750 (S.D.Tex.2005) (Smith, M.J.) (noting that, in 2005, this occurred every seven seconds).[6] Presumably this information, too, would be given to the government, turning a request only for CSLI related to the time of phone calls placed or received by the phone into one that would provide location information generated by that phone for every minute of the day.

For example, in the 13–199 Application, the government represents that the CSLI "sought by the United States would reveal only general location about a cell phone

---

**5.** The only difference among the Applications is the name of the applicable cell phone company.

**6.** The rate of these automatic connections on modern cellphones is unknown.

(e.g. location within a region with average radius of a mile or more) and would not reveal the location of a cell phone with precision sufficient to reveal facts about the interior of a protected space." 13–199 Application at 14. Yet again, there is no such limit in the actual proposed order that the government wishes the Court to issue. The precision and frequency at which CSLI is generated can have a significant impact on Fourth Amendment analysis, particularly when the data sought might indicate a person's presence in a home or other details about a protected space in violation of the Fourth amendment. *Compare United States v. Karo*, 468 U.S. 705, 716, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (using an electronic device without a warrant to determine whether a particular person or property is within the home at a particular time violates the Fourth Amendment), and *Kyllo v. United States*, 533 U.S. 27, 36–38, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (thermal imaging that detected heat within a home without a warrant violates the Fourth Amendment), *with, e.g., United States v. Booker*, No. 11–CR–255, 2013 WL 2903562, at *11 (N.D.Ga. June 13, 2013) (Thrash, J.) ("The general nature of the location information sought by the government here— merely the cell towers and sectors used during each call—does not bring it into the realm of Fourth Amendment protection."). The government must be consistent and clear in explaining precisely what CSLI it seeks so that the Court can determine whether its detection will or will not invade areas constitutionally protected by the Fourth Amendment.

### 2. *T–Mobile's Privacy Policy Is Broader Than the Language in the Application*

The 13–199 Application includes part of T–Mobile's privacy policy.[7] In part, this policy states that T–Mobile "may collect your device's approximate location whenever it is turned on (subject to coverage limitations)." 13–199 Application at 5. By its own terms, this policy indicates that T–Mobile is possibly collecting CSLI whenever the device is on, regardless of whether a call is being made or received. This contradicts the supposed limited scope of the government's Applications, which each claim that CSLI is only collected when the phone is actively making or receiving a phone call. *See* 13–199 Application at 24 ("Further, government's counsel has been informed that call-time cell-site data is the only data retained by the provider in this case.") The government must not only clarify precisely what it seeks, but it must also clarify what CSLI is collected by the cellphone companies and what will therefore be disclosed as a result of the Court's order.

### 3. *The CSLI Sought in the Application May No Longer Exist*

The final problem appears only in the 13–1006 Application, which seeks CSLI from Sprint for a seven day time period in September 2011. The government claims that the CSLI is only maintained for two years. 13–1006 Application at 7–8. However, by the time the Application was filed with this Court on September 17, 2013, more than two years had passed since some of the requested CSLI had been generated. The government did not contact chambers to check on the status of this Application until weeks after the two-year deadline had passed for all of the CSLI. Perhaps the government used inaccurate boilerplate language about Sprint's retention policy, or perhaps it asked Sprint to retain the records under 18 U.S.C.

---

7. The reference to T–Mobile in the 13–199 Application is another error by the government. That Application is directed to AT & T, not T–Mobile.

§ 2703(f); however, it is not the duty of the Court to engage in speculation and conjecture. Until this is clarified, the Court will not grant the application.

\* \* \*

By issuing the March 11, 2013, Minute Order, this Court attempted to warn the government that the use of boilerplate language must be carefully scrutinized to ensure that it is both accurate and up to date. The government should heed this warning and act more carefully. Generic and inaccurate boilerplate language will only cause this Court to reject future § 2703(d) applications.

## III. The Government Has Failed to Meet Its Statutory Burden

### A. The § 2703(d) Standard

■ Under § 2703(d), the government must "offer[ ] specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). To satisfy this standard, the government must provide a sufficient factual basis to the Court to justify its application ("specific and articulable facts"), and it must show that the data requested is "relevant and material" to the investigation. *Id.* Furthermore, the plain language of this statute suggests that each individual "record[ ] or other information" must be "relevant and material" to the investigation; otherwise, the government could obtain an entire database of CSLI or other phone-related information merely because one or some of the entries in that database are "relevant and material." *Id.*

As is explained below, the government has failed to provide sufficient "specific and articulable facts" to show that the requested periods of CSLI are "relevant and material" to the investigations. This Court notes, though, that it may be impossible for the government to show that 120 days—or even 7 days—of 24/7 CSLI could ever be "relevant and material" to an investigation involving a crime that occurred at a specific time and place. Instead, the government is urged to resubmit substantially narrowed CSLI requests.

### B. The Factual Basis of Each Application

#### 1. *13–199 Application*

The government is investigating a series of seven crimes that occurred in December 2012 and January 2013. *See* 13–199 Application at 23–23. Although the government provides the specific time of day of only one of these crimes, it presumably has such information about all of them. *Id.* According to the 13–199 Application, the government was contacted by a "reliable source" who provided a phone number for one of the co-conspirators; this co-conspirator later confirmed to law enforcement that it is his phone number. *Id.* at 23. No specific explanation is provided in the Application for why 120 days of CSLI is sought or what the police now know that justifies so many days of CSLI.

#### 2. *13–1005 Application*

This Application is part of the government's investigation into the same crime as 13–199. *See* 13–1005 Application at 2–3. Here, a "second source" identified the second alleged co-conspirator by his first name only. *Id.* at 4. Upon further investigation, the government discovered that this individual had been previously arrested in an unrelated matter, which is how the government obtained his phone number. *Id.* Once again, no specific explanation is provided in the Application for why 120 days of CSLI is sought.

### 3. *13–1006 Application*

This Application is part of an investigation into a crime that occurred on a specific day in September 2011; there are no allegations in the Application that this crime is connected to any other crimes. *See* 13–1006 Application at 2–3. The government "received information" that the target phone was owned by one of the suspects, who admitted that he was "probably in the area" of the crime when it occurred. *Id.* at 5–6. Unlike 13–199 and 13–1005, here the government does attempt to justify why seven full days of CSLI are sought: the owner of the target phone called one of the other conspirators just before the crime, and the government wants the CSLI to determine whether the suspect who owns the target phone "was engaged in surveillance" of the target of the crime. *Id.* at 6–7.

### C. Application of the "Relevant and Material" Standard to These Applications

#### 1. *120 Days of CSLI in the 13–199 and 13–1005 Applications*

■ Turning first to the 120 days of CSLI requested in the 13–199 and 13–1005 Applications, the government has not shown why CSLI for such a broad timespan is either relevant or material, let alone both, to the investigation. The underlying investigation is focused on a series of crimes that, according to the "specific and articulable facts" in the Applications, occurred over the course of slightly more than one month. No explanation has been given why the government is also seeking three *additional* months of CSLI. If the government is simply trying to tie the suspects to the scenes of the crimes, all that must be done is to ask for CSLI that is contemporaneous to the crimes. There may be good reasons to seek the CSLI for a larger timeframe—such as if the government believes there is a long-running conspiracy with other people involved in the crimes who have not been identified and it wants to use CSLI to confirm that the conspirators were meeting on various occasions—but it is the government's burden to provide "specific and articulable facts" explaining why it is entitled to these records; the Court cannot simply infer what the purpose may be. Because the Applications fail to do so, the government has necessarily failed to show that the CSLI is "relevant and material" to the investigation.

■ A second and independent reason that these Applications are overbroad is that they seek CSLI 24/7 for all 120 days. Even assuming that the government's representations about the limited scope of the CSLI are accurate and that the CSLI really would be limited to incoming or outgoing phone calls—and this Court has serious doubts that *only* such CSLI would be turned over to the government—it is too much for the Court to infer that, for example, CSLI after midnight is "relevant and material" to the investigation. To the extent that it is possible for the government to show that CSLI at all times of the day is relevant and material, here the government has failed to provide the necessary factual justification. The targets of these crimes only operate at set times of day, and the government is also aware of what time of day these crimes occurred. Even if CSLI outside of these specific timeframes would help provide a necessary context for the government to better understand the suspects' movements in relation to these crimes, the government must make its case and provide "specific and articulable facts" supporting such broad CSLI collection. A request for CSLI largely untethered from the temporal aspects of the crime that is being investigated cannot be sufficiently "relevant and material" to · warrant disclosure under

§ 2703(d) unless some explanation is provided for the demand for so much apparently irrelevant CSLI.

### 2. *Seven Days of CSLI in the 13–1006 Application*

 Similar reasons compel this Court to conclude that even the narrower seven-day timeframe in the 13–1006 Application is not sufficiently tailored to be actually "relevant and material" to the investigation. The government is investigating a specific crime that targeted an entity that operates on a fixed schedule; if the purpose of obtaining the CSLI is to determine, for example, whether the suspect carried out surveillance prior to the crime, there should be a specific timeframe for which the government is seeking its information—one that has some temporal connection to the crime. As with the other Applications, it is too much for the Court to infer from this Application that all CSLI for every minute of the 7 days is "relevant and material" to the investigation. The government must either limit its request or provide additional "specific and articulable facts."

\* \* \*

The government may have a legitimate need to look at this information and draw patterns from it as part of an ongoing criminal investigation. But allegations that an individual may have been involved in a specific crime on a specific date and at a specific time are insufficient to allow the 120 days—or even seven days—of CSLI sought in these Applications. Instead, there must be "specific and articulable facts" to demonstrate why all of the CSLI the government seeks is "relevant and material" to the investigation. The burden is on the government to justify its § 2703(d) requests, and it has failed to adequately do so here. Accordingly, the government's Applications will be denied without prejudice so that it can more narrowly tailor the requests and provide "specific and articulable" facts to show that the CSLI sought is "relevant and material" to the investigations.[8]

### IV. Conclusion and Order

For the reasons explained above, it is hereby

**ORDERED** that the government's Applications are **DENIED** without prejudice.

---

8. In any revised applications, the government will also have to make clear to the Court how it intends to work with the target cellphone companies to secure only the relevant and material records—and no more.